Philip B. MITMAN, Mayor of the City of Easton, on behalf of the City of Easton, Appellants

v.

POLICE PENSION COMMISSION OF The CITY OF EASTON and Matthew Renninger.

Commonwealth Court of Pennsylvania.

Argued April 2, 2009.

Decided May 6, 2009.

Reargument Denied En Banc July 2, 2009.

Joel M. Scheer, Easton, for appellant.

Ralph J. Bellafatto, Easton, for appellee, Police Pension Commission of the City of Easton.

Gary Neil Asteak, Easton, for appellee, Matthew Renninger.

BEFORE: COHN JUBELIRER, Judge and SIMPSON, Judge (P), and FRIEDMAN, Senior Judge.

OPINION BY Judge SIMPSON.

In this appeal, Philip B. Mitman, former Mayor of the City of Easton, on behalf of the City of Easton (the City), asks whether the Police Pension Commission of the City of Easton (Commission) erred in awarding former Easton Police Officer Matthew Renninger (Renninger) a disability pension. Discerning no error, we affirm.

On March 25, 2005, at approximately 2:45 p.m., members of the Easton Police Department SWAT team, including Renninger and Officer Jesse Sollman, returned to the Easton Police Department after a day of SWAT training and began breaking down and cleaning various weapons used that day. Renninger took his firearm, a 40–caliber handgun, out of his holster and placed it on a bench in the locker room. Renninger placed the gun on safe, left the handgun at that location, and obtained an MP–5 from the primary armory to clean it in the secondary cleaning room.

After cleaning the MP–5, Renninger put it away and picked up his handgun to clean it, entering the secondary cleaning room again. In so doing, he took his firearm off of safe and walked down the hallway to clean his weapon, without the safety applied and without the benefit of a holster. He did, however, unload the gun before walking to the cleaning room. Once Renninger cleaned the handgun, he went back to the locker room, loaded the gun, and was about to holster it when he recognized a white smudge on the weapon. He then returned to the secondary cleaning room where Officers Weber and Sollman were present.

Renninger asked Officer Sollman how to remove the smudge, at which time the handgun was fully loaded. Officer Sollman instructed Renninger on how to remove the smudge, and Renninger went to a corner of the room and began to wipe down the loaded firearm. After wiping down the slide, Renninger took the weapon off of safe and turned counter-clockwise. While he was turning, Renninger bumped into Officer Sollman, momentarily lost his grip on the handgun, and as he reflexively grabbed and re-gripped the handgun, the gun accidentally discharged, killing Officer Sollman.

The incident was the subject of a state-wide grand jury investigation, which found that, although Renninger was negligent in handling his weapon, his actions were not unlawful so as to justify filing criminal charges. The grand jury did, however, recommended Renninger's termination as an Easton Police Officer.

Thereafter, the Easton Police Department conducted an internal investigation, the result of which led to issuance of a "Loudermill[1] Notice," advising Renninger of the Department's intent to recommend disciplinary action.

On May 2, 2006, police administration issued a memorandum to the City's Mayor recommending Renninger's termination. The next day, the Mayor advised Renninger he accepted the recommendation and, based on various acts of misconduct, termination was warranted. The letter also provided Renninger with notice, as required by law in a third class city, of his options to challenge the termination recommendation, recognizing termination could not be effective immediately, but required final action by city council. The first option provided for a civil service

---

1. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

hearing before city council, while the second option described the binding arbitration procedures under the collective bargaining agreement between the City and the police union. Renninger was advised that action on the recommendation for termination would be taken at the May 10, 2006 city council meeting.

On May 9, 2006, Renninger responded to the letter and indicated he was tendering his retirement as a City employee. Concurrent with that request, Renninger submitted a request for a "disability retirement" through the police association pension plan "as a result of an on duty injury sustained while in the lawful performance of his duties" and his inability to perform the duties of his position. Reproduced Record (R.R.) at 503a.

The Assistant City Solicitor responded, acknowledging receipt of Renninger's request and indicating the City's interpretation that Renninger was unconditionally and voluntarily terminating his employment. The Assistant City Solicitor further indicated the balance of the letter would be treated as an application for retirement benefits, which would be reviewed.

In May 2007, the Commission conducted two hearings on Renninger's application. About 10 days after the final hearing, the Commission convened and adopted the decision that is the subject of this appeal. By a six-to-one vote (the Mayor dissenting), the Commission determined Renninger met the conditions under Section 147.19 of the Easton Police Pension Ordinance (Pension Ordinance), and was therefore entitled to receipt of a pension pursuant to Section 147.21 as of May 9, 2006. The Commission specifically determined "Renninger's disability was sustained while in the lawful performance of his duties." R.R. at 517a. The actual disability, which was uncontested, was post-traumatic stress disorder and depression that prevented Renninger from performing his duties as a police officer.

The City appealed to the Court of Common Pleas of Northampton County (trial court), arguing the Commission lacked subject matter jurisdiction to grant Renninger's request because Renninger did not prove his separation from employment was the result of an "honorable discharge." The City also argued: the Commission erred in determining Renninger's conduct was within the "lawful performance of his duties"; Renninger's disability should not be compensable as a subjective psychic injury; and, the trial court should deny the pension as a matter of public policy because Renninger's psychic injury was a subjective reaction to events placed in motion by his own misconduct. The trial court subsequently issued a thorough and thoughtful opinion in which it rejected each of these arguments.

More particularly, the trial court determined, contrary to the City's assertions, an honorable discharge was not a prerequisite to a pension award under the Pension Ordinance. Therefore, the pension could not be denied on the ground Renninger's separation from the police department did not result from an honorable discharge. Next, adopting the Commission's analysis, the trial court determined Renninger did, in fact, sustain his disability while in the "lawful performance of his duties." To that end, the trial court noted the Commission's statements that Renninger had not been convicted of a crime or misdemeanor and the grand jury investigating the underlying events found Renninger to be guilty of simple negligence only, rather than gross negligence as would have supported a charge of involuntary manslaughter. In sum, the trial court stated it felt constrained to accept the Commission's interpretation of the undefined phrase "lawful performance of duties."

Finally, the trial court rejected the City's argument that Renninger failed to

establish his mental injury was the product of "abnormal working conditions." The trial court noted the "abnormal working conditions" standard, which arises out of workers' compensation and heart and lung cases, was inapplicable here. In any event, the trial court noted the Commission's conclusion that Renninger's disability did not arise from exposure to normal working conditions, but rather the incident represented an abnormal, unexpected and extraordinary work incident. For these reasons, the trial court dismissed the City's appeal and affirmed the Commission's decision. The City appeals to this Court.[2]

■ At the outset, like the trial court we note, "[t]his is a tragic case, emotionally charged for all parties." Tr. Ct., Slip Op. at 4. Nevertheless, in evaluating a local agency decision, where a complete record is made before the agency, our review is limited to determining whether the agency committed an error of law and whether the agency's material findings are supported by substantial evidence. *Piatek v. Pulaski Twp.*, 828 A.2d 1164 (Pa. Cmwlth.2003).

On appeal, the City raises three arguments. First, the City asserts the Commission erred in determining Renninger's psychic injuries occurred in the "lawful performance of his duties." Next, the City contends the trial court erred in concluding an "honorable discharge" was not a prerequisite to Renninger's receipt of the pension. Finally, the City argues Renninger is not entitled to the pension award because he failed to prove his psychic injuries arose from "abnormal working conditions."

## I. "Lawful Performance of Duties"

■ The City first argues the Commission erred in determining Renninger sustained his disability while in the "lawful performance of his duties" because his actions constituted a gross deviation from safety standards taught as early as the police academy. The City argues that in reaching its determination, the Commission did not give adequate consideration to the unrebutted testimony of Captain David Ryan and firearms expert, Emmanuel Kapelsohn, both of whom opined Renninger's conduct represented a significant departure from department policy, procedure and training. The City notes Kapelsohn also testified Renninger's actions were grossly negligent. In addition, the City highlights the Commission's finding that Renninger's actions in handling the weapon were contrary to department policy and procedure. Comm'n Op., Finding of Fact (F.F.) No. 3.

The City argues the Commission erred in failing to consider whether Renninger's departure from the norms of proper gun handling, which resulted in the death of a fellow officer, constituted the "performance of his duties." The City maintains that in an application for a disability pension, the term "lawful" should be subject to a more generalized interpretation than is typically applied, requiring performance free of misconduct. Here, in cleaning a loaded weapon, carrying it without engaging the safety, and failing to follow training concerning vigilance as to the trigger finger, the muzzle of the gun, and the whereabouts of his partner, Renninger was not engaged in the performance of his duties. The City notes this case involves an extraordinary disability benefit for which Renninger would not otherwise qualify

---

**2.** The record does not contain a copy of the Pension Ordinance; however, a copy of the current pension ordinance provisions may be found at CITY OF EASTON, PA., CODE ch. 110, Arts. I, II (1995) *available at* http://www.ecode360.com/?custId=EA2741.

based on years of service. It further maintains this benefit was intended for officers disabled while protecting the public, not those who depart from training and rules of conduct and act in a grossly negligent manner when handling a weapon.

The City claims that while the Pension Ordinance does not define the phrase "lawful performance of duties," and there is no judicial precedent, the award of a disability pension here shocks the conscience, and this Court should conclude, as a matter of law, a psychic injury claim that occurred as a result of observing the consequences of one's own gross negligence does not equate to "lawful performance of duties."

Upon review, we discern no error in the Commission's determination that Renninger suffered a permanent disability as a result of an on-duty injury sustained while in the lawful performance of his duties.

Section 147.19(c) of the Pension Ordinance states (with emphasis added):

> Should a participant with twelve or fewer years of service become so permanently disabled, as the result of an on duty injury sustained *while in the lawful performance of his duties,* as to render him unable to perform the duties of his position, regardless of the age of such participant, he shall be entitled to receive such portion of the pension provided in Section 147.21 as the period of his service up to the date of his termination bears to 20 years of service.

Here, the City does not dispute Renninger is permanently disabled as a result of an on-duty injury and that his disability renders him unable to perform the duties of a police officer. Rather, the City takes issue with the Commission's determination that Renninger sustained the injury "while in the lawful performance of his duties."

The phrase "lawful performance of duties" is not specifically defined by the Pension Ordinance. In addition, our research discloses no Pennsylvania cases that define this phrase.

In construing the undefined phrase "lawful performance of his duties," the Commission looked to the Pension Ordinance's "disqualification" provision. That provision vests the Commission with authority to revoke or suspend the pension of a beneficiary who is granted a pension and is later convicted of a crime or misdemeanor. The Commission stated it believed the phrase "lawful performance" should be interpreted *in pari materia* with this "disqualification" provision. More specifically, the Commission stated Renninger was not convicted of a crime or misdemeanor, and further, the grand jury found Renninger guilty of simple negligence only rather than gross negligence. Gross negligence would support a criminal charge of involuntary manslaughter. The Commission noted that although it was not bound by the grand jury's findings, it would afford those findings considerable weight. Further, the Commission stated, the City did not identify a law that Renninger violated at the time of the incident.

As further support, the Commission noted a general rule that pension statutes are to be liberally construed in favor of the pensioner. *See, e.g., Kosanovich v. Ret. Bd. of Allegheny County,* 724 A.2d 420 (Pa.Cmwlth.1999). In addition, the Pension Ordinance does not contain a provision that would disqualify Renninger's receipt of a pension based on misfeasance. *Cf. Horsley v. Phila. Bd. of Pensions & Ret.,* 97 Pa.Cmwlth. 558, 510 A.2d 841 (1986), *aff'd,* 519 Pa. 264, 546 A.2d 1115 (1988).

■ In reviewing the Commission's interpretation of the phrase "lawful performance of his duties" in Section 147.19(c) of the Pension Ordinance, we are mindful of the following principles. Like statutes, the primary objective of interpreting ordi-

nances is to determine the intent of the legislative body that enacted the ordinance. *See* 1 Pa.C.S. § 1921; *Adams Outdoor Adver., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469 (Pa.Cmwlth. 2006), *appeal denied*, 592 Pa. 768, 923 A.2d 1175 (2007). Where the words in an ordinance are free of ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921; *see also* 1 Pa.C.S. § 1903 (words and phrases in a statute shall be construed in accordance with their common and accepted usage). Additionally, courts ordinarily afford deference to municipalities in interpreting their ordinances. *Adams Outdoor Adver.*

The Commission's interpretation of the phrase "lawful performance of his duties" is consistent with the above cited statutory construction principles and is reasonable. Moreover, in light of the deference afforded the Commission's interpretation and the liberal construction to be given in favor of the pensioner, we are unable to reach the result advocated by the City. In short, the City presents no persuasive reason to disturb the Commission's interpretation of Section 147.19(c) of the Pension Ordinance.

Further, while our research discloses no Pennsylvania cases that define the phrase "lawful performance of duties," in *Trustees of Police Pension Board of Aurora v. Putnam*, 162 Colo. 232, 425 P.2d 695 (1967), the Supreme Court of Colorado considered whether a city police pension board properly denied a pension to a former police officer who suffered disabling psychic injuries as a result of accusations of unlawful conduct made against him. The pension board denied the pension based on its finding that the officer's conduct did not constitute "lawful performance of a police officer's duty...." *Id.* at 696. However, the Supreme Court of Colorado reversed, concluding the record lacked evidence to support the board's finding that the officer committed an unlawful act in the course of his employment. The court noted there was no testimony as to the veracity of the accusations against the officer and, as a result, the board lacked authority to deny the officer's pension request.

Similar to *Putnam*, here we are confronted with a case in which a police officer suffered disabling psychic injuries from his reaction to an event that occurred as a result of his own conduct. As in *Putnam*, in the absence of evidence that Renninger's conduct was, in fact, in violation of the law, the record cannot support a finding that Renninger's psychic injuries did not occur in the "lawful performance of his duties." *See* BLACK'S LAW DICTIONARY 892 (8th ed.2004) (defining "lawful" as "[n]ot contrary to law; permitted by law.")

## II. Honorable Discharge

■ The City next argues the trial court erred in concluding an honorable discharge was not a prerequisite to Renninger's entitlement to the pension award. The City concedes it did not raise this issue before the Commission; however, it maintains, it preserved the issue by raising it in its notice of appeal to the trial court because the issue relates to subject matter jurisdiction, which is non-waivable.

As to the merits, the City asserts the pertinent enabling legislation, Section 4301 of the Third Class City Code,[3] mandates that cities establish a police pension fund, "for the benefit of such members of the police force as shall receive *honorable discharge* therefrom by reason of age or disability...." The City acknowledges its Pension Ordinance does not mention this criterion; however, it argues that based on the above-quoted statutory provision, to receive the extraordinary benefit of a disability pension, an individual must be honorably discharged.

---

**3.** Act of June 23, 1931, P.L. 932, *as amended,* 53 P.S. § 39301. (Emphasis added).

The City contends Renninger did not prove he was honorably discharged and, as a result, he could not meet his burden of proof and the Commission lacked jurisdiction to hear his request. The City distinguishes this Court's recent decision in *Borough of Mahanoy City v. Mahanoy City Police Department*, 948 A.2d 239 (Pa.Cmwlth.), *appeal denied*, 599 Pa. 683, 960 A.2d 456 (2008), upon which the trial court relied to support its conclusion that Renninger did not have to prove he was honorably discharged as a prerequisite to obtaining the pension award. The City asserts here Renninger retired in the face of notice he would be terminated for cause. It further points out that while the grand jury cleared Renninger of criminal conduct, it recommended his termination. The City maintains this is not tantamount to an honorable discharge. For the reasons that follow, we reject the City's arguments.

■ More specifically, the City concedes it did not raise the "honorable discharge" issue before the Commission; therefore, it is waived. *See Roomet v. Bd. of License Inspection & Review*, 928 A.2d 1162 (Pa. Cmwlth.2007) (Section 753(a) of the Local Agency Law, 2 Pa.C.S. § 753(a), incorporates the waiver doctrine by requiring all legal questions be raised before a local agency). Although the City maintains this issue relates to subject matter jurisdiction and is therefore non-waivable, this argument fails. Subject matter jurisdiction relates to the competency of a tribunal to hear and decide the type of controversy presented. *Commonwealth v. Bethea*, 574 Pa. 100, 828 A.2d 1066 (2003). Clearly, the issue of whether Renninger was required to prove he was honorably discharged as a prerequisite to receiving a disability pension did not relate to the Commission's competency to hear and decide the controversy. As such, the City waived the issue by failing to raise it before the Commission.

■ Even if not waived, however, the City's argument fails. More particularly, in support of its argument that Renninger was required to establish he was "honorably discharged" in order to receive the disability pension, the City relies on Section 4301 of the Third Class City Code, which states, as pertinent:

Cities shall establish, by ordinance, a police pension fund ... which fund shall at all times be under the direction and control of [city] council ... and applied, under such regulations as council may, by ordinance, prescribe, for the benefit of such members of the police force as shall receive honorable discharge therefrom by reason of age or disability....

53 P.S. § 39301.

■ Despite its reliance on this statutory provision, the City acknowledges the Pension Ordinance does *not* require an applicant to prove he was honorably discharged in order to receive a disability pension. In the absence of such a requirement in the Pension Ordinance, we agree with the trial court that an honorable discharge is not a prerequisite to receipt of a disability pension award here. As the trial court explained:

An honorable discharge is not a prerequisite to a pension award, particularly when not required by [the City's] own [Pension Ordinance]. *See* [*Mahanoy City* ]. In *Mahanoy City*, the Commonwealth Court decided that an honorable discharge was not required by the local collective bargaining agreement governing police pensions and therefore could not be used as a bar to the award of a pension. Similarly, [the City] was free to adopt an ordinance that made an honorable discharge a prerequisite to receiving a pension, but did not do so.

We are not implying that the legislature could not have required an hon-

orable discharge or faithful service as a prerequisite to the vesting of rights in a pension fund, but that the legislature did not clearly and appropriately express such an intent. As our Supreme Court recently stated, "if the legislature intended faithful service to be a prerequisite to receipt of retirement benefits, it could have, and *should have, used appropriate language to express this intent.*" *Bellomini v. State Employees' Retirement Board,* 498 Pa. 204, 445 A.2d 737 (1982) (emphasis added). And, in pension cases, such plans should be liberally construed in favor of the employee. *Levitt v. Billy Penn Corporation,* 219 Pa.Super. 499, 283 A.2d 873 (1971).

*City of Sunbury v. Karpinski,* 70 Pa. Cmwlth. 473, 453 A.2d 1062, 1064 (1982). Therefore, the condition of an honorable discharge cannot be imposed over and above the requirements set forth in the [Pension Ordinance]. . . .

Tr. Ct., Slip Op. at 6.

In *Karpinski,* this Court specifically determined a city ordinance, which required an "honorable discharge" was a prerequisite to receipt of a pension, conflicted with Sections 4302 and 4303 of the Third Class City Code, 53 P.S. §§ 39302, 39303, and was therefore void. In that case, the city's chief of police was charged with theft by failure to make proper disposition of parking meter money belonging to the city. The chief resigned prior to the city council's decision to dishonorably discharge him without pension benefits. This Court held that because the city ordinance requiring an honorable discharge as a prerequisite to receipt of the pension conflicted with the Third Class City Code, the ordinance was void, and could not operate to bar the chief's receipt of his pension benefits. Thus, based on *Karpinski,* even if the Pension Ordinance here contained an "honorable discharge" requirement, the vitality of such a requirement would be questionable.

In addition, the City's argument fails for factual reasons. More specifically, Renninger *voluntarily resigned* from his position; he was not dishonorably discharged. The City chose to accept Renninger's voluntary resignation rather than continue with proceedings that may have resulted in a dishonorable discharge. The City could have declined to accept Renninger's voluntary resignation and proceeded instead to a hearing to establish a "for cause" termination. However, the City did not pursue this alternative. As such, Renninger was never dishonorably discharged from his position. For these reasons, the City's argument fails.[4]

### III. "Abnormal Working Conditions"

■ As a final issue, the City argues Renninger did not prove his psychic injuries resulted from "abnormal working conditions" as is required for a "mental-mental" type of claim in the context of a work injury. The City acknowledges case law

4. The City also briefly asserts in *Ridley Park Police v. Borough of Ridley Park,* 105 Pa. Cmwlth. 474, 524 A.2d 998 (1987), this Court reaffirmed the importance of the "honorable discharge" requirement in the police pension context. In *Ridley Park,* we rejected the borough's attempt to define the term "disability" in a collective bargaining agreement for purposes of police disability pensions as "the inability to engage in any substantial gainful activity by reason of any medically determin-able physical or mental impairment." *Id.* at 999. We determined the borough's proposed definition conflicted with Section 1190 of the Borough Code, Act of February 1, 1966, P.L. (1965) 1656, *as amended,* 53 P.S. § 46190, and was, therefore, impermissible.

A careful reading of *Ridley Park* fails to disclose any support for the City's argument that Renninger was required to establish he was honorably discharged in order to receive the disability pension at issue here.

regarding "mental-mental" injuries primarily involves claims for benefits under the statute commonly known as the Heart and Lung Act[5] and the Workers' Compensation Act.[6] However, it contends that to the extent a disability pension is also predicated on work-relatedness, the same standard that applies to "mental-mental" claims, should apply here. *See City of Phila. v. Civ. Serv. Comm'n of City of Phila. (Ryder)*, 565 Pa. 265, 772 A.2d 962 (2001).

Here, the City asserts, Renninger made no attempt to establish his mental injury resulted from abnormal working conditions. In any event, it argues, the working conditions here were not abnormal; what was abnormal was Renninger's conduct in cleaning a loaded gun and then releasing the safety before he returned it to his locker. The City also maintains that although the trial court observed the "abnormal working conditions" standard is not set forth in the Pension Ordinance, such a standard also does not explicitly appear in the heart and lung or workers' compensation statutes. It asserts whatever inspired the courts to create a higher test to recover disability benefits based on a psychic injury in those contexts, should similarly inspire this Court to apply such a standard here.

As recognized by the City, cases that apply the "abnormal working conditions" standard for psychic injury claims primarily arise under the Workers' Compensation Act or the Heart and Lung Act. The City cites no authority that this standard applies to this police pension matter. In rejecting the City's argument that the "abnormal working conditions" standard should apply here, the trial court explained:

There is no requirement in the [Pension Ordinance] that an applicant overcome a burden of establishing that a disability is the result of abnormal working conditions. The Ordinance[ ] also [does] not distinguish between physical and mental injuries and [does] not require a heightened burden of proof for claimants alleging a mental injury. As discussed above, the Commission determined ... Renninger's disability arose in the lawful performance of his duties, and therefore, the disability is necessarily work-related. Furthermore ... Renninger's disability is not disputed.

Tr. Ct., Slip Op. at 9. Additionally, in its decision the Commission stated:

[The City] cites no case law to support the applicability of [w]orkers' [c]ompensation principles to the instant pension case. Moreover, given that there is no conflicting evidence regarding the existence of ... Renninger's permanent disability arising from post traumatic stress disorder and his severe depression, the Commission believes that he would be entitled to a pension even if these principles did apply.... Renninger's disability did not arise as a result of normal working conditions; rather, the incident of March 25, 2005, represents an abnormal, unexpected, and extraordinary work incident.

R.R. at 516a. We discern no error in the Commission's determination that the abnormal working conditions standard is inapplicable in this matter. Our research reveals no case law that applies the "abnormal working conditions" standard outside of psychic injury claims under the Workers' Compensation Act, the Heart and Lung Act or for "injured-on-duty" (IOD) benefits under the Philadelphia Civil Service Ordinance.[7]

---

**5.** Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–38.

**6.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

**7.** Interestingly, if the City was a participant in

To that end, *Ryder*, cited by the City, does not compel a different result. There, the Supreme Court applied the "abnormal working conditions" standard to a City of Philadelphia Police Officer's psychic injury claim for IOD benefits under the Philadelphia Civil Service Ordinance. Notably, at the outset of its discussion, the Court explained:

> An employee seeking to recover [IOD] benefits pursuant to Regulation 32 has the burden of proving the existence of a disability and that it is service-connected. Because of the similarities in intent and form to the Pennsylvania Workers' Compensation Act, the principles enunciated in interpreting the Act have been applied to Regulation 32 where similar substantive issues are involved. Therefore, we will discuss the issue of the applicable burden of proof in [the police officer's] claim for psychic injury in the context of Regulation 32 by analyzing the cases that have arisen in the context of workers' compensation proceedings.

*Ryder*, 565 Pa. at 272, 772 A.2d at 965–66 (citations omitted). Unlike *Ryder*, this case does not involve a claim for IOD benefits; rather, it involves a claim for a disability pension pursuant to the Pension Ordinance. Therefore, *Ryder* does not support the City's argument on this point.

Based on the foregoing, we affirm.

the Pennsylvania Municipal Retirement System (PMRS), which is subject to the Pennsylvania Municipal Retirement Law (PMRL), Act of February 1, 1974, P.L. 34, *as amended*, 53 P.S. §§ 881.101–881.305, Renninger *would have* had to qualify for workers' compensation benefits in order to qualify for a disability pension. See Mahanoy City (explaining the

### ORDER

AND NOW, this 6th day of May, 2009, the order of the Court of Common Pleas of Northampton County is **AFFIRMED**.

PMRL defines "service connected-disability" with reference to Workers' Compensation Act and requires a disability applicant to prove he qualifies for workers' compensation benefits in order to qualify for a disability pension). While the City once was a PMRS participant, it ceased participation in the PMRS around 1994.