# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Protect PT and Patricia R. Wendell, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 1254 C.D. 2024 |
| | : | ARGUED: November 6, 2025 |
| Township of Penn and Board of | : | |
| Commissioners of the Township | : | |
| of Penn | : | |
| | : | |
| v. | : | |
| | : | |
| EQT Artemis Production, LLC | : | |


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


## OPINION NOT REPORTED

**MEMORANDUM OPINION BY
SENIOR JUDGE LEADBETTER**           **FILED:  March 4 , 2026**

       Protect PT and Patricia R. Wendell, Objectors, appeal from the order of the Court of Common Pleas of Westmoreland County affirming the decision of the Penn Township Board of Commissioners and the Township of Penn, Appellees, granting preliminary and final approval for the revised land development application of EQT Artemis Production, LLC, Intervenor-Appellee (Applicant[1]), for an unconventional natural gas well pad in the Township.  We affirm.

---

[1] Upon recent application of Olympus Energy LLC, the original Intervenor-Appellee in this matter, the Court substituted EQT Artemis Production, LLC as Intervenor-Appellee.  EQT Artemis
**(Footnote continued on next page…)**

In December 2021, Applicant applied for a special exception for the construction and operation of an unconventional natural gas well pad and associated wells, to be known as the Aphrodite Well Pad, from the Penn Township Zoning Hearing Board (ZHB). The Aphrodite Well Pad originally was to be located on two properties located in both the Industrial Commerce (IC) and Mineral Extraction Overlay (MEO) zoning districts of the Township. Under the Township's zoning ordinance, unconventional natural gas wells are authorized by special exception in the MEO District. Zoning Ordinance § 190-641. The ZHB conducted a hearing in which Protect PT appeared in opposition and was granted standing over Applicant's objection, because of Protect PT's previous involvement in similar matters before the Board. Ms. Wendell, who resides on a property approximately 1.8 miles from the well pad site, testified as a witness for Protect PT. In July 2022, the ZHB approved the application for a special exception subject to conditions. Protect PT appealed the ZHB's approval of the special exception to the trial court, which affirmed the decision. Protect PT appealed to this Court, which dismissed the appeal as untimely. *See* Mem. and Order, *Protect PT v. Penn Twp. Zoning Hr'g Bd.* (Pa. Cmwlth., No. 423 C.D. 2023, filed Jan. 9, 2024) (*per curiam*).

After the ZHB's approval of the special exception, Applicant applied for approval of the Aphrodite Well Pad under the Township's subdivision and land development ordinance (SALDO). The Commissioners granted approval of the land development plan in October 2022; no appeal was filed from that approval.

---

Production is a wholly owned subsidiary of EQT Corporation, which purchased all assets of Olympus Energy, and succeeds Olympus Energy as the proper Intervenor-Appellee.

Appellees join in Applicant's Brief.

Prior to beginning the zoning and land development processes, Applicant had applied for and was granted an erosion and sediment control general permit (ESCGP) from the Pennsylvania Department of Environmental Protection (DEP). After the approval of the special exception and the land development applications, a previously unidentified stream was discovered near the approved, original well pad site necessitating the moving/reorientation of the original site. Although the sites as depicted on the maps appear to have considerable overlap, the surface hole was moved approximately 178 feet and was to be located on only one of the two properties that would have been used for the original site. Objectors' Br. at 9 and Exs. 1 and 2. Applicant amended its prior ESCGP plan and DEP approved the amendment. As a result of this movement, Applicant submitted a revised request for land development approval to the Township, which was approved by resolution of the Commissioners subject to conditions, including that Applicant comply with the ZHB's special exception conditions (i.e., the conditions on the original well pad site).

It is from this resolution that Objectors appealed to the trial court. Applicant responded that the site changes were *de minimis* and did not warrant beginning the zoning process again, and that Ms. Wendell's residence was too far away to establish standing. Counsel for the Township and the Commissioners confirmed that it was the Commissioners' belief that the change was *de minimis* and did not require further approval of the ZHB. The trial court found that Objectors lacked standing to appeal the Commissioners' decision to grant approval of the revised land development plan and affirmed the Commissioners' approval.[2] Upon

[2] In the body of the opinion, the trial court stated that the appeal must be dismissed but ultimately styled its order as affirming the decision of the Board of Commissioners.
**(Footnote continued on next page…)**

3

Objectors' appeal to this Court, the trial court filed an opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(a) (Supplemental Rule 1925(a) Opinion), in support of its earlier opinion and order.

On appeal, Objectors raise 14 numbered questions. Objectors begin with the substantive argument that the trial court erred in finding that they lacked standing under a geographical proximity test and also argue that they have other routes to standing, including under Section 715 of the Sunshine Act, 65 Pa.C.S. § 715 (relating to jurisdiction and venue of judicial proceedings), and by estoppel. However, Objectors' central contention is that provisions in the Township's zoning ordinance and SALDO required that Applicant apply to the ZHB for a new special exception for the modified well pad site before applying for approval of the revised land development plan, that failing to do so was a violation of those provisions, and that the trial court erred in "relying on . . . [the original] special exception approval" from the ZHB. In this scheme, the trial court "usurped the power of the ZHB" in making a standing determination and erred in not finding that the ZHB had exclusive jurisdiction to determine compliance with the zoning ordinance's requirements. Other issues emanate from this central contention, including that by dint of there being no new application for a special exception, there were no proceedings compliant with the requirements of the Pennsylvania Municipalities Planning Code[3]

---

Notably, Applicant moved for a site view and hearing on the issue of standing, which motion Objectors opposed. The trial court denied Applicant's motion.

[3] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101 - 11202.

4

(MPC), the Sunshine Act,[4] and the Fourteenth Amendment[5] to the United States Constitution.[6] Because we believe that the issue of standing is dispositive, we affirm the trial court.

### *Standing Based upon Physical Proximity*

In some situations, an objector will be deemed to have standing based solely upon close physical proximity.[7] In this regard, the trial court cited various cases of this Court finding that objectors in zoning cases living one-half mile or more from proposed developments lacked standing:

> The Commonwealth Court has held that persons who live as far away as Ms. Wendell (approximately 1.8 miles) or even closer to proposed well pad sites do not have standing in a zoning appeal based on their lack of geographic proximity. *Lodge v. Robinson Twp. Zoning [Hr'g] Bd.*, 283 A.3d 910, 922 (Pa. Cmwlth. 2022) (property owners 2.22 miles, 1.17 and .51 miles away from a well pad do not have standing). Objectors residing half a mile or more from various types of proposed developments have repeatedly been denied standing by the Commonwealth Court. *See*[] *Active Amusement Co. v. Zoning Bd. of Adjustment*, 479 A.2d 697 (Pa. Cmwlth. 1984) ([.5] mile[s]); *Appeal of Farmland Indus[.], Inc.*, 531 A.2d 79 (Pa. Cmwlth. 1987) ([.5] mile[s]); *Laughman v. Zoning [Hr'g] Bd. of Newberry Twp.*, 964 A.2d 19 (Pa. Cmwlth. 2009) ([0.8] . . . mile); [Soc'y] *Created to Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment of the City of Philadelphia*, 951 A.2d [398] (Pa. Cmwlth. 2008), *aff'd as*

---

[4] 65 Pa.C.S. §§ 701 - 716.

[5] U.S. Const. amend. XIV.

[6] The Fourteenth Amendment issue is not listed in the statement of questions presented.

[7] There is no assertion that Protect PT would have anything other than derivative standing through Ms. Wendell.

*Spahn v. Zoning Bd. of Adjustment of the City of Philadelphia*, 977 A.2d 1132 (Pa. 2009) ([1] mile).

Trial Ct. Op. at 6. We agree with the trial court that Ms. Wendell does not live close enough to the well pad to have automatic standing.

Nevertheless, an objector may have standing if s/he can prove that s/he is aggrieved by the project. In appeals of land development decisions to the courts of common pleas, as in zoning appeals, "[p]etitioners must be 'persons aggrieved' in order to have standing to initiate an appeal of the [b]oard of [s]upervisors' [d]ecision." *See Whitehall Manor, Inc. v. Planning Comm. of City of Allentown*, 79 A.3d 720 (Pa. Cmwlth. 2013) [quoting *Application of Rouse & Assocs. Ship Rd. Land Ltd. P'ship*, 636 A.2d 231, 234–35 (Pa. Cmwlth. 1993)]. In this regard, the Court has indicated that the "[t]he proximity necessary to confer standing varies depending on the land use at issue." *Lorenzen v. West Cornwall Twp. Zoning Hr'g Bd.*, 222 A.3d 893, 898 (Pa. Cmwlth. 2019); *see also In re Broad Mt. Dev. Co., LLC*, 17 A.3d 434, 440-441 (Pa. Cmwlth. 2011) (holding that property owners who resided 1.5 miles from proposed wind turbines had standing based on testimony concerning possible fires, health problems, incidents of flickering, and low frequency vibrations); *Grant v. Zoning Hr'g Bd. of the Twp. of Penn*, 776 A.2d 356, 359 (Pa. Cmwlth. 2001) (holding that property owners who resided 1.25 miles from proposed electric generating facility had standing where "wind and sound from the proposed site flow to their land").

To achieve standing on this basis, a person must be impacted negatively or "aggrieved" in some real and direct fashion. *Pittsburgh Palisades Park, LLC v. Commonwealth of Pa.*, 888 A.2d 655, 660 (Pa. 2005). To be aggrieved, a person must possess a "substantial, direct, and immediate interest" in the claim sought to be litigated. *William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269,

6

282-283 (Pa. 1975). Our Supreme Court has summarized the standard of the *William Penn* test as follows:

> In order to be substantial, there must be some discernable effect or some interest other than the abstract interest all citizens have in the outcome of proceedings. In order to be direct, the party must show some causation of harm to his interest. In order to be immediate, there must be a causal connection between the action complained of and the injury to the person challenging it.

*Spahn v. Zoning Bd. of Adjustment*, 977 A.2d 1132, 1151 (Pa. 2009).

Nowhere do Objectors argue that they have shown the requisite substantial, direct, and immediate interest to establish standing before the trial court, nor do they directly contest the trial court's finding that there was no factual basis showing that Ms. Wendell was aggrieved. Rather, they contend that a factual record should have been established before the ZHB, which they assert should have first considered a new application for a special exception on the revised well pad site. In other words, Objectors are seeking a second bite at the apple. While we find that Objectors' failure to establish standing is dispositive, we will briefly address the claim that they should be given a second chance to do so.

### *Process for Determining Standing*

In contending that a new special exception application and hearing before the ZHB were required to determine the threshold issue of standing, Objectors cite the zoning ordinance's requirement that unconventional well applications "shall be reviewed and approved by the [ZHB] as a special exception prior to the issuance of any required Township permits," Zoning Ordinance § 190-641.A,[8] and the

---

[8] Section 190-641(A) of the Zoning Ordinance provides as follows:

**(Footnote continued on next page…)**

7

SALDO's requirement that "[t]he land development plan shall demonstrate compliance with all appliable requirements of this chapter and Chapter 190, Zoning," SALDO § 156-23.H.[9,10]  However, as the trial court noted:

> In considering whether a new special exception was required, it is important to keep in mind the differing purposes of zoning ordinances and subdivision and land development ordinances.  "Special exception or conditional use proceedings involve only the proposed use of the land, and do not involve the particular details of the design of the proposed development." *In re Thompson*, 896 A.2d 659, 670 (Pa. Cmwlth. 2006).  "Zoning only regulates the use of land and not the particulars of development and construction." *Id*.  "[A] zoning application addresses the use of the land, while a subdivision plan addresses how the land is to be developed." *Bd. of Commissioners of Cheltenham Twp. v. Hansen-Lloyd, L.P.*, 166 A.3d 496, 504 (Pa. Cmwlth. 2017), *aff[']d sub nom. In re Bd. of Commissioners of*

---

Oil and gas operations, which include the drilling of oil or natural gas wells in the MEO Mineral Extraction Overlay District, or in the construction of compressor stations and gas processing plants in the IC Industrial Commerce District, shall be reviewed and approved by the Penn Township Zoning Hearing Board as a special exception prior to the issuance of any required Township permits . . . .

Zoning Ordinance § 190-641(A).

[9] Section 156-23(H) of the Penn Township SALDO provides as follows: "The land development plan shall demonstrate compliance with all applicable requirements of this chapter and Chapter 190, Zoning."  SALDO § 156-23(H).

[10] Objectors point out that the requirements for standing in land development appeals are different from those for zoning appeals.  *See Miravich v. Twp. of Exeter*, 6 A.3d 1076, 1079 (Pa. Cmwlth. 2010) (holding that the procedural requirements for establishing standing applicable to zoning proceedings do not apply to land development appeals, which only require an objector to show substantive standing, because the MPC does not establish equivalent requirements).  However, whether Objectors have substantive standing—a requisite for appeal under *Miravich*—is the issue here.

8

*Cheltenham Twp.*, 211 A.3d 845 (Pa. 2019) (citation omitted).

> Protect PT can point to no precedent that requires that a new special exception must be obtained every time a modification is made to the land development plan under the SALDO. Whether or not the DEP considers the 178-foot location change of the well pad a major modification for the purpose of issuing an ESCGP-3 is irrelevant to the question at hand. The zoning decision was made, permitting the use of unconventional natural gas on the property. The details of development were then refined through the land development plans under the SALDO. Nothing that occurred in this process runs contrary to Pennsylvania law, and it is clear that Penn Township and the Board considered [Applicant] in compliance with the [Zoning] Ordinance and the SALDO, based on the two respective grants of the land development plan applications.

> "[C]ourts ordinarily afford deference to municipalities in interpreting their ordinances." *Mitman v. Police Pension Comm'n of City of Easton*, 972 A.2d 1276, 1282 (Pa. Cmwlth. 2009), *aff[']d sub nom. Mitman ex rel. City of Easton v. Police Pension Comm'n of City of Easton*, 23 A.3d 527 (Pa. 2011). If Penn Township had believed that a new special exception was required before a revised land use plan was admitted, they could have required it. None of the municipal entities involved appear to find that necessary under their governing laws, and the court will not read into the SALDO requirements that are not articulated. The original special exception grant was clearly adequate to support the second land use application, in the opinion [of] the Board and the Township. An absurd result would occur if, every time there was a slight variation in the contents of a land use plan, the developer was required to start over from the beginning by once again asking the Zoning Hearing Board for permission for a use that was already granted.

Trial Ct. Op. at 7-8. We agree.

9

Finally, Objectors at no time during the pendency of their appeal requested a hearing in the trial court to establish standing, as Applicant asserts they could have done pursuant to Section 1005-A of the MPC, 53 P.S. § 11005-A ("If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence . . . ."). Applicant argues that the failure to request a hearing means that they have waived the right to one. Applicant's Br. at 23 In fact, Objectors opposed such a hearing when it was requested by Applicant. In sum, Objectors' argument would appear to be no more than a futile attempt to justify their failure to make their case for standing when they had the opportunity.

### Standing by Estoppel

Objectors argue that Applicant has waived the issue of standing because during the hearing on the original well pad site, the ZHB voted to recognize Protect PT as having standing and Ms. Wendell testified before the ZHB without objection to her standing at that time. Further, Applicant did not subsequently challenge this procedure by the ZHB. This, Objectors argue, collaterally and judicially estops Applicant from asserting that they lack standing. However, before the trial court, Applicant did argue that Objectors were not aggrieved and lacked standing to pursue their appeal.[11]

As our Supreme Court recently held in *South Bethlehem Associates, LP v. Zoning Hearing Board of Bethlehem*, 294 A.3d 441 (Pa. 2023):

> [The a]ppellant was allowed to make its case to the zoning board consistent with the MPC's liberal allowance of party status before that administrative body. But it does not follow that the MPC or this Court's standing jurisprudence

---

[11] Ms. Wendell was not a party to the appeal to the trial court or this Court.

10

must recognize a right in favor of [the a]ppellant to continue its opposition through an appeal to court . . . .

In sum, then, we hold that a party who appears before a zoning board may only appeal an adverse decision to court if that party has standing per this Court's traditional understanding of the concept.

*Id.* at 448. Insofar as standing to appeal to the trial court involves a different inquiry than the determination of whether a person was able to testify before the ZHB, we do not agree with Objectors that Applicant is estopped from challenging their standing to appeal.

The Court need not address Objectors' additional arguments concerning violations of the MPC, the Sunshine Act and the Fourteenth Amendment, given that Objectors lack standing to pursue them.[12]

---

[12] Nonetheless, we note that the trial court opined with respect to the MPC and Sunshine Act arguments as follows:

[Objectors] also allege[] that the Township violated the MPC because there was not a public hearing with published legal notice prior to the land development plan's approval. As discussed briefly above regarding standing, proceedings under zoning ordinances and SALDOs have different procedural requirements. Unlike zoning matters which require public notice, hearing and allowance for comment, "similar procedural protections are not required in subdivision and land development proceedings." *Whitehall Manor, Inc. v. Plan. Comm'n of City of Allentown*, 79 A.3d 720, 727 (Pa. Cmwlth. 2013). There was thus no legal basis to require [the] Township to provide any type of notice and hearing before approval of the second land development plan.

[Objectors'] final contention is that the Township violated the Sunshine Act. The Sunshine Act generally provides that municipal agency meetings be held open to the public. 65 Pa.C.S. § 704. Exceptions to this general provision, however, include the holding of "quasi-judicial deliberations." 65 Pa.C.S. § 708(a)(5); *see also*

**(Footnote continued on next page…)**

11

## Conclusion

In light of the foregoing, we affirm the order of the trial court.

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

*Kennedy v. Upper Milford Twp. Zoning Hr'g Bd.*, 834 A.2d 1104, 1118 (Pa. 2003). In any case, there is no requirement under the MPC that these types of decisions about SALDO compliance determinations require the holding of any public hearing or meeting at all, and so there is no colorable argument that the [] Commissioners violated the Sunshine Act in making their November 15, 2023 determination.

Trial Ct. Op. at 8-9. Once again we agree and find no merit in Objectors' contentions.

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Protect PT and Patricia R. Wendell, :
                Appellants :
                        :
                        :
          v. : No. 1254 C.D. 2024
                        :
Township of Penn and Board of :
Commissioners of the Township :
of Penn :
                        :
          v. :
                        :
EQT Artemis Production, LLC :

## **O R D E R**

       AND NOW, this 4th day of March, 2026, the order of the Court of Common Pleas of Westmoreland County is AFFIRMED.

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita